Filed 9/17/24  P. v. Gutierrez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>　Plaintiff and Respondent,<br><br>v.<br><br>JONATHAN GUTIERREZ,<br><br>　Defendant and Appellant. | 2d Crim. No. B330656<br>(Super. Ct. No. BA369668)<br>(Los Angeles County) |

　　Jonathan Gutierrez appeals from an order denying his Penal Code section 1172.6 petition for resentencing.[1]  The denial occurred at the prima facie stage of the proceedings.

　　In April 2012 a jury convicted appellant and his codefendants – David Contreras and Andrew Garcia – of the first degree murder of Moises Castro.  (§§ 187, subd. (a), 189.)  Contreras was the actual killer.  As to each defendant, the jury found true allegations that a principal had discharged a firearm

---

　　[1] All statutory references are to the Penal Code unless otherwise stated.

causing death (§ 12022.53, subds. (d), (e)) and that the crime had been committed for the benefit of a criminal street gang. (§ 186.22, subd. (b)(1)(C).)  The trial court sentenced each defendant to prison for 50 years to life: 25 years to life for first degree murder plus a consecutive term of 25 years to life for the firearm-gang enhancement.  (§ 12022.53, subds. (d), (e).) Appellant and his codefendants appealed.  We affirmed the judgment in an unpublished opinion: *People v. Gutierrez et al.* (March 27, 2014, B244448, as modified on April 23, 2014) (*Gutierrez I*).)

In 2022 appellant filed his section 1172.6 petition.  He claims that an instruction given at his trial – former CALJIC No. 3.00 – allowed the jury to convict him of murder by imputing malice to him based solely on his participation in a crime.  The instruction provided in relevant part: "'Persons who are involved in committing a crime are referred to as principals in that crime. Each principal, regardless of the extent or manner of participation is *equally guilty*.  Principals include: [¶]  1. Those who directly and actively commit the act constituting the crime, or [¶]  2. Those who aid and abet the commission of the crime.' (Italics added.)"  (*Gutierez I, supra*, slip opn. at p. 7.)

We conclude appellant failed to make a prima facie case that he "could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).)  In addition, adverse legal determinations in *Gutierrez I* are the law of the case and preclude appellant from obtaining relief.  Accordingly, we affirm.

*Facts*

Our factual summary is taken verbatim from the factual summary at pages 2-4 of the unpublished *Gutierrez I* slip

2

opinion.[2]  We summarize the facts "for background purposes and to provide context for the parties' arguments."  (*People v. Flores* (2022) 76 Cal.App.5th 974, 978, fn. 2.)  In determining whether appellant made a prima facie case for relief, we do not consider the facts as stated in *Gutierrez I*.  (See *Id*. at p. 988 ["the factual summary in an appellate opinion is not evidence that may be considered at an evidentiary hearing to determine a petitioner's eligibility for resentencing.  (§ [1172.6], subd. (d)(3) . . . .)  If such evidence may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage"].)

"In March 2010 [appellant] and Garcia were members of the Breed Street criminal street gang.  One or two days before March 29, 2010, [appellant, Garcia and Contreras] were inside Maria Luna's apartment . . . .  [Appellant] and Garcia said that they were going to 'jump' Contreras into the gang.  A gang expert explained: 'Gang members can join a gang by being jumped in, which means they're beaten by numerous members of the gang.'

"[Appellant, Garcia, and Contreras] left Luna's apartment and returned about 20 minutes later. . . .  [Appellant] and Garcia said that they had jumped Contreras into the gang.  [Appellant] also said that he was going to take Contreras on his 'first mission.'  A gang expert testified that a 'mission' is a criminal act committed by a gang member.  The more violent the act, the more the reputation of the gang and gang member will be enhanced.

---

[2] We previously took judicial notice of the record on appeal in *Gutierrez I*, including our opinion.

3

Murder 'is the ultimate crime that . . . gangs commit to instill the most fear and intimidation in the community.'

" . . . At about noon on March 29, 2010, [appellant, Garcia, and Contreras again] left Luna's apartment. Approximately 15 to 20 minutes later, [Amber] Maples[, who was inside Luna's apartment,] heard four or five gunshots. Three minutes after the gunshots, [appellant, Garcia, and Contreras] ran into the apartment. They were 'out of breath, sweaty, panicky, nervous.' Garcia and [appellant] ran to the bathroom, where they washed and urinated on their hands. An expert on gunshot residue testified that suspects will sometimes urinate on their hands in an attempt to remove traces of gunshot residue.

"Contreras went to the kitchen and spoke with Elisa Penalber, a friend of Maria Luna. . . .

"Penalber saw [appellant, Garcia, and Contreras] 'stashing the guns.' There were three guns, and she saw [appellant] put one inside a vacuum cleaner. Penalber asked [appellant] and Garcia if they had taken Contreras 'on his first mission.' One of them answered, 'Yes,' and stated that 'he emptied the clip.'

[¶] . . .

"Maples saw [appellant] and Garcia 'wiping down some guns with . . . T-shirts.' . . . Minutes later, the police arrived at the apartment and ordered everyone 'to come out one by one with [their] hands up.'

"At about 12:25 p.m. on March 29, 2010, Moises Castro left his apartment to go to work. . . . Stephanie Rios was walking nearby. She saw Castro running toward an alley. Four or five men were chasing him. The men appeared to be 17 or 18 years old, and all of them were holding handguns. They were pointing the guns at Castro. Rios got 'a good look' at the face of the

4

pursuer who was closest to Castro.  She recognized him as Contreras, who had attended the same school as Rios.  The other pursuers said 'Stop' and 'Get that fool.'  Contreras . . . shot five times at Castro.  Castro died from a gunshot wound to the left upper back. . . .

"After the shooting, Castro's pursuers ran away and Stephanie Rios telephoned 911.  Officer Jose Rios drove to the scene of the shooting.  There, he heard a police radio broadcast that the suspects had run into an apartment at 125 Matthews Street.  This was where Maria Luna lived.  Rios and other officers went to that location, which was about 10 houses away from the shooting.

" . . . The police searched the apartment and found three handguns inside a vacuum cleaner.  One of the handguns was an unloaded stainless steel .357 magnum revolver with wooden grips.  (Gun #1.)  The other two handguns – another stainless steel .357 magnum revolver with wooden grips and a blue steel .357 magnum revolver – were fully loaded.  A firearms expert opined that a bullet jacket fragment found at the scene of the shooting had been fired from gun #1. . . .

"Gunshot residue was found on Contreras's hands but not on the hands of [appellant] and Garcia. . . .

"In a hypothetical question, the prosecutor presented the facts of the shooting to a gang expert.  The expert opined that the shooting was committed for the benefit of a criminal street gang.  The expert explained that the shooting 'enhances [the gang's] reputation as a violent criminal street gang. . . .  [¶]  It enhances the reputation of those members that are involved because murder is the ultimate crime to gain the most status.'"

*Trial Court's Ruling at Prima Facie Hearing*

The trial court ruled: "[T]he record of conviction readily demonstrates [appellant] was convicted as an aider and abettor, and that neither felony murder, natural and probable consequences, or any theory upon which criminal liability could be imputed to defendant merely on the basis of his involvement in the crime was presented at trial by way of instructions to the jury or argument of counsel. The petition is therefore DENIED."

*Section 1172.6*

Section 1172.6, subdivision (a) provides that "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . may file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining [charges] when" certain conditions apply. One of the conditions is that the petitioner "could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).)

After a section 1172.6 petition is filed, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (*Id.*, subd. (c).)

If an order to show cause is issued, the court shall conduct an evidentiary hearing to determine the petitioner's eligibility for relief. (§ 1172.6, subd. (d)(1).) At the evidentiary hearing the burden is on the People "to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . ." (*Id.*, subd. (d)(3).)

6

*Prima Facie Stage of Section 1172.6 Proceeding*

"[T]he prima facie inquiry . . . is limited. . . . '"[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause.'" . . . 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).)

"The record of conviction will necessarily inform the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process." (*Lewis, supra,* 11 Cal.5th at p. 971.)

"Appellate opinions . . . are generally considered to be part of the record of conviction. . . . In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.] . . . [T]he 'prima facie bar was intentionally and correctly set very low.'" (*Lewis, supra,* 11 Cal.5th at p. 972.) "'If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. . . .'" (*People v. Curiel* (2023) 15 Cal.5th 433, 450.)

7

*Appellant Failed to Make a Prima Facie Case for Relief*

Appellant acknowledges "that the jury was not instructed on felony murder or on the doctrine of natural and probable consequence[s]." He contends he made a prima facie case for relief because "[t]he jury may have relied on [another] ' . . . theory under which malice is imputed to a person based solely on that person's participation in a crime.' (Pen. Code § 1172.6, subd. (a)(1).)"

Appellant's imputed malice theory is premised on former CALJIC No. 3.00's language that principals in the commission of a crime are "equally guilty." Appellant argues that this language "was misleading and allowed the jury to find him guilty based on imputed malice under the particular facts of this case, including the gang expert's testimony and the context of the specific gang 'mission' at issue." "[J]urors were allowed to impute malice to [appellant] because he was on a gang 'mission' in which one of the gang members harbored malice."

Our Supreme Court has "recognized that [former CALJIC No. 3.00] 'generally stated a correct rule of law,' in that '[a]ll principals, including aiders and abettors, are "equally guilty" in the sense that they are all criminally liable.'" (*People v. Amezcua and Flores* (2019) 6 Cal.5th 886, 918.) But "contrary to a possible implication of former CALJIC No. 3.00, an actual killer and an aider/abettor are not always guilty of the same offense. Rather, in a homicide prosecution not involving felony murder or the natural and probable consequences doctrine, the aider/abettor's guilt is based on the combined acts of all the principals and on the aider/abettor's own knowledge and intent. Consequently, in some circumstances an aider/abettor may be culpable for a greater or lesser crime than the actual killer. [Citation.] . . .

8

[F]ormer CALJIC No. 3.00 'could be misleading if the principals in a particular case might be guilty of different crimes and the jury interprets the instruction to preclude such a finding.'"[3]  (*Id.* at pp. 917-918.)

In *Gutierrez I* Contreras contended the "equally guilty" language was erroneous, and Guitierrez joined in the contention. (*Gutierrez I*, *supra*, slip opn. at pp. 7-8.)  We concluded: "'[A]s a general proposition and in most cases, CALJIC No. 3.00 is a correct statement of the law.  [Citations.]  As such, [Contreras has] forfeited [his] claim of error since [he] failed to request modification or clarification in the court below.  [Citations.]' (*People v. Mejia* (2012) 211 Cal.App.4th 586, 624.)"  (*Id.* at p. 8, bracketed material in original.)

We further concluded that the "equally guilty" language was not misleading in view of other jury instructions: "[T]he trial court also gave CALJIC No. 3.01, which 'advised the jury that it must base its decision of each [defendant's] liability not simply on the mental state of the direct perpetrator of the crime, but on that [defendant's] state of mind and the extent to which he knew of and intended to facilitate the purpose contemplated by the perpetrator.'  [Citation.]  Moreover, the last paragraph of CALJIC No. 3.00 advised the jury that, when the crime charged is murder, the guilt of each participant depends upon his own mental state.  '. . . CALJIC No. 3.01 [and the last paragraph of CALJIC No. 3.00] adequately clarified any ambiguity created by the "equally guilty" language of CALJIC No. 3.00.  The charge as a whole, therefore, did not mislead the jury. . . .'"  (*Gutierrez I*,

---

[3] Current CALJIC No. 3.00 provides that, "[e]xcept as to the crime of murder, each principal . . . is equally guilty."

*supra*, slip opn. at p. 8, last pair of brackets in original, fn. omitted.)

The *Gutierrez I* opinion continued: "'Even were we to find the instruction misleading under the facts of this case, which we do not, the error was harmless beyond a reasonable doubt. Given the strength of the evidence demonstrating that [appellant and his accomplices] . . . intend[ed] to kill [Castro], we find that if the instruction was error, beyond a reasonable doubt a rational jury's verdict would not have been different had the challenged language been omitted. [Citation.]'" (*Gutierrez I, supra*, slip opn. at p. 8.)

"We independently review an order denying section 1172.6 relief at the prima facie stage." (*People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 930 (*Berry-Vierwinden*).) Based on *Berry-Vierwinden*, as a matter of law appellant is not entitled to relief under section 1172.6. In 2010 Berry-Vierwinden was convicted of first degree murder. In his section 1172.6 petition for resentencing, he argued that the jury instructions permitted the jury to convict him of murder by imputing malice to him based solely on his participation in a crime. The allegedly erroneous instruction was former CALCRIM No. 400, which contained the "equally guilty" language of former CALJIC No. 3.00.[4]

---

[4] Former CALCRIM No. 400 provided: "'A person may be guilty of a crime in two ways. One, he may have directly committed the crime. I will call that person the perpetrator. Two, he may have aided and abetted a perpetrator, who directly committed the crime. A person is *equally guilty* of the crime whether he committed it personally or aided and abetted the perpetrator who committed it.'" (*Berry-Vierwinden, supra,* 97 Cal.App.5th at pp. 926-927, italics added.)

10

The Court of Appeal noted that section 1172.6 provides relief only if the petitioner "'could not presently be convicted of murder . . . *because of changes* to Section 188 or 189 made effective January 1, 2019' by Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437). (§ 1172.6, subd. (a)(3), italics added.)" (*Berry-Vierwinden, supra*, 97 Cal.App.5th at p. 925.) The Court of Appeal concluded that "the trial court correctly denied relief at the prima facie stage because Berry-Vierwinden's claim of instructional error fails to establish that he" could not be presently convicted because of these statutory changes. (*Ibid*.)

The Court of Appeal explained: "Senate Bill No. 1437 did not *change* the law to prohibit direct aider and abettor liability on an imputed malice theory – this was already settled California law by the time of Berry-Vierwinden's 2010 trial." (*Berry-Vierwinden, supra*, 97 Cal.App.5th at p. 936.) "[A] court may deny the petition at the prima facie stage if the record of conviction conclusively establishes that the petitioner was convicted on a theory not affected by Senate Bill No. 1437." (*Id.* at p. 931; see also *People v. Burns* (2023) 95 Cal.App.5th 862, 867 (*Burns*) ["A [section 1172.6] petition . . . supplements a defendant's traditional direct appeal by providing an opportunity to make arguments that did not exist at the time of the appeal, but have arisen since 2019 as a result of recent statutory amendments"]; *Id.* at p. 868 ["The Supreme Court's *McCoy* decision [*People v. McCoy* (2001) 25 Cal.4th 1111], as explained and developed in *Samaniego* [*People v. Samaniego* (2009) 172 Cal.App.4th 1148] and *Nero* [People v. *Nero* (2010) 181 Cal.App.4th 504], made clear that the direct perpetrator's mental state could *not* be imputed to an aider and abettor, whose mental state had to be independently evaluated"].)

In *Burns, supra,* 95 Cal.App.5th 862, in 2010 Burns was convicted of murder after the jury had been instructed pursuant to former CALCRIM No. 400. The court denied Burns's section 1172.6 motion. It reasoned that the instruction "did not operate to offer the jury a theory of legal liability that can no longer support a conviction for murder as a result of the recent statutory changes" made by Senate Bill No. 1437. (*Burns,* at pp. 868-869.)

Like Berry-Vierwinden and Burns, appellant cannot satisfy the section 1172.6, subdivision (a)(3) requirement that he "could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." (*Ibid.*) "[T]he record of conviction conclusively establishes that [appellant] was convicted on a theory not affected by Senate Bill No. 1437." (*Berry-Vierwinden, supra,* 97 Cal.App.5th at p. 931.)

In any event, appellant is not entitled to relief because the following legal determinations in *Gutierrez I* were the law of the case at the prima facie hearing: (1) the "equally guilty" language of former CALJIC No. 3.00 did not mislead the jury into convicting appellant based on his accomplices' state of mind; and (2) even if the language was misleading, the error was harmless beyond a reasonable doubt because of " 'the strength of the evidence demonstrating that [appellant and his accomplices] . . . intend[ed] to kill [Castro]. . . . '"[5] (*Gutierrez I, supra,* slip opn. at p. 8, first pair of brackets added.)

---

[5] We need not consider whether, for purposes of the prima facie hearing, the law of the case doctrine applied to *Gutierrez I*'s determination that appellant had forfeited his claim of instructional error by failing to request modification or clarification of the instruction during the jury trial.

"Under the law of the case doctrine, when an appellate court "'states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout [the case's] subsequent progress, both in the lower court and upon subsequent appeal . . . .'" [Citation.] Absent an applicable exception, the doctrine 'requir[es] both trial and appellate courts to follow the rules laid down upon a former appeal whether such rules are right or wrong.'" (*People v. Barragan* (2004) 32 Cal.4th 236, 246.)

Pursuant to the law of the case doctrine, the above-specified legal determinations in *Gutierrez I* were binding at the prima facie hearing. (See *People v. Medrano* (2024) 98 Cal.App.5th 1254, 1264 (*Medrano*) [law of the case doctrine applies at prima facie stage of section 1172.6 proceeding where the appellate court's prior legal determination could not be controverted by new evidence introduced at an evidentiary hearing conducted pursuant to section 1172.6, subdivision (d)(3)].) Here, new evidence introduced at the evidentiary hearing could not controvert *Gutierrez I's* determination that the "equally guilty" language of former CALJIC No. 3.00 did not mislead the jury into convicting appellant based on a theory of imputed malice.

In view of the binding legal determinations in *Gutierrez I*, appellant cannot make a prima facie showing that he was "convicted of . . . murder under . . . [a] theory under which malice is imputed to a person based solely on that person's participation in a crime . . . ." (§ 1172.6, subd. (a).) The jury was not misled by the "equally guilty" language of CALJIC No. 3.00. It must have found that appellant had personally harbored the mental state required for first degree murder.

13

"'[T]he doctrine [of the law of the case] will not be adhered to where its application will result in an unjust decision, e.g., where there has been a "manifest misapplication of existing principles resulting in substantial injustice" [citation], or the controlling rules of law have been altered or clarified by a decision [or statutory amendment] intervening between the first and second appellate determinations [citation].'" (*Medrano*, *supra*, 98 Cal.App.5th at pp. 1262-1263, brackets in original.) Appellant has not shown that he falls within this exception to the application of the law of the case doctrine.

*Disposition*

The order denying appellant's section 1172.6 petition is affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P. J.

CODY, J.

Craig Elliott Veals, Judge

Superior Court County of Los Angeles

_____

Richard A. Levy, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Zee Rodriguez, Supervising Deputy Attorney General, Charles S. Lee, Deputy Attorney General, for Plaintiff and Respondent.